[No. 30540.   Department Two.   June 24, 1948.]

S. ROSENTHAL *et al., Respondents,* v. THE CITY OF
TACOMA, *Appellant.*[1]

'Reported in 195 P. (2d) 102.

*Clarence M. Boyle, Dean Barline, Horace G. Geer,* and *Robert E. Cooper,* for appellant.

*W. W. Mount,* for respondents.

JEFFERS, J.—This action involves the legality of an assessment levied by the city of Tacoma against lots 3 to 24, inclusive, block 1307, New Tacoma Addition to the city of Tacoma, for fifty per cent of the construction costs of a concrete sidewalk, retaining wall, and guardrail. This property lies on the east side of Market street in Tacoma, between south Thirteenth and south Fifteenth streets, and the above improvements were constructed in front of the property. All of the lots assessed lie below the level of Market street and are not accessible to the sidewalk in their present state.

There is no dispute as to the material facts. On October 16, 1946, John S. Roberts, commissioner of public works of the city of Tacoma, notified each of the respondents (owners of the lots assessed) that the sidewalk abutting his property was in such condition "as to render the same as unfit and unsafe for public travel." The notice further provided:

"You are further notified that pursuant to authority contained in Section 9331, Remington's Revised Statutes, and by Ordinance No. 12794 of the City of Tacoma [passed Feb. 6, 1946], you are instructed and required to renew said sidewalk upon which your said property abuts, according to plans and specifications hereto attached, within ninety (90) days from October 15, 1946; that the estimated cost of such renewal is the sum of [the amount varied in the notices to the property owners, and in each case exceeded fifty per cent of the assessed valuation exclusive of improvements] . . ."

Attached to this notice were copies of the blue prints showing the work and type of structure as originally planned. Copies of such blue prints were also made a part

of the original contract entered into between the city and J. E. Wells.

The total estimated cost of the improvement as originally planned was approximately $26,000. The total assessed valuation of the real estate, exclusive of improvements, according to the valuation placed upon it for general taxation purposes, was $12,550.

None of the owners of the property involved petitioned for the improvement. The city council never adopted a resolution declaring its intention to order such improvement, nor did it ever fix a time for a public hearing or give those interested an opportunity to appear before the council and present their objections.

On February 5, 1947, the city council passed ordinance No. 13013, authorizing the board of contracts and awards to call for bids and let a contract for the reconstruction of five hundred fifty feet of sidewalk, including construction of a retaining wall and guardrail, all in accordance with plans and specifications on file in the office of the commissioner of public works. The cost of such improvement was to be paid from the general fund, and the fund reimbursed to the extent of such cost from moneys to be collected under assessments to be thereafter levied against the properties adjacent to and abutting upon such sidewalk.

On March 3, 1947, the city of Tacoma entered into a contract with J. E. Wells for the performance of the work. Mr. Wells' bid, based upon the work to be done as originally planned, was approximately $20,628.

According to Mr. Bantz, Tacoma city engineer, after construction work had been started, it was found necessary to change the plans and redesign the entire structure. Without attempting to describe in detail the difference in the structure as originally planned and the one actually constructed, it is sufficient, we think, to state that the retaining wall was a different structure entirely. This wall, as constructed, was about twenty feet in height, twelve to twenty inches in thickness. Mr. Bantz stated that there was no question but that this wall would furnish some support for the street.

As finally completed, there are really two structures, namely, a sidewalk and a retaining wall and base. The final cost of the improvement was $61,374.35.

The property owners protested, whereupon the commissioner of public works made up an assessment roll, in which the property owners were to bear fifty per cent of the cost, or $30,687.16, and the city was to bear fifty per cent of such cost.

A hearing was had on the assessment roll, and, while no notice of such hearing was published, the property owners appeared by their counsel and presented and filed written objections. These objections were overruled, and the council, on September 24, 1947, passed ordinance No. 13204, confirming the assessment roll as presented by the commissioner of public works.

The property owners appealed to the superior court for Pierce county, in accordance with the provisions of Rem. Rev. Stat., § 9374 [P.P.C. § 401-45]. While the city contended that none of the provisions of Rem. Rev. Stat., title 60, chapter 27 (§ 9352 *et seq.*), the local improvement act of 1911, of which § 9374, *supra,* is a part, was applicable to the assessment here involved, it was stipulated between counsel for the parties that the cause could be heard and determined under the above form of appeal, but that the city should not be construed to have waived the right to question any portion of chapter 27, title 60, *supra,* except that no question would be raised as to the form of appeal procedure.

The matter came on for hearing before the court on December 8, 1947, and thereafter and on January 7, 1948, the court made and entered findings of fact, conclusions of law, and a judgment. By its judgment, the court set aside the assessment roll of the city as adopted by the passage of ordinance No. 13204, wherein appellant property owners were assessed the total sum of $30,687.16. The city has appealed from the above judgment.

Appellant makes eighteen assignments of error.

It is admitted by appellant that, in making the improvement here in question, it did so under the provisions of Rem.

Rev. Stat., §§ 9331 and 9332 [P.P.C. §§ 407-1, -3], which sections were passed by the legislature in 1905 as §§ 1 and 2, chapter 37, Laws of 1905, p. 61. Chapter 37 is a special act " . . . relating to maintenance, repair and renewal of sidewalks in cities of the first, second, third and fourth class, and other cities and towns of equal population working under special charters, and providing for the payment thereof by the owners of abutting property."

Respondents make two contentions in support of the judgment entered, and these contentions raise the two main questions to be determined herein. It is first contended that chapter 37, Laws of 1905, under which the city proceeded, was repealed by implication by chapter 98, Laws of 1911, p. 441. It is next contended that, if chapter 37, Laws of 1905, is still in effect, nevertheless the city was not, by such act, authorized or justified, under the guise of renewing a wooden sidewalk, in constructing a steel reinforced concrete retaining wall, separate and apart from a steel reinforced concrete sidewalk, and assessing against the abutting property owners fifty per cent of the cost of both structures, regardless of the amount.

██ If either of the foregoing theories be correct, the judgment of the trial court must be affirmed, because it is the rule in cases triable *de novo* that, if the decision of the trial court can soundly rest on any ground, it must be sustained. *State ex rel. Spokane etc. Branch v. Justice Court,* 189 Wash. 87, 63 P. (2d) 937.

██ We shall first discuss the question of whether or not chapter 37, Laws of 1905, was by implication repealed by chapter 98, Laws of 1911. We preface this discussion with the statement that we fully recognize that repeals by implication are not favored. We stated in *Abel v. Diking & Drainage Imp. Dist. No. 4,* 19 Wn. (2d) 356, 363, 142 P. (2d) 1017:

"Repeals by implication are ordinarily not favored in law, and a later act will not operate to repeal an earlier act except in such instances where the later act covers the *entire subject matter of the earlier legislation, is complete in itself, and is evidently intended to supersede the prior legislation*

*on the subject,* or unless the *two acts are so clearly incon-sistent with, and repugnant to,* each other that they cannot, by a fair and reasonable construction, be reconciled and both given effect. *State ex rel. Spokane & Eastern Branch of the Seattle First Nat. Bank v. Justice Court,* 189 Wash. 87, 63 P. (2d) 937, and cases therein cited; 25 R. C. L. 920, Statutes, § 170." (Italics ours.)

It may be admitted that chapter 98, *supra,* does not spe-cifically, by reference thereto, repeal chapter 37, Laws of 1905, but chapter 98 does contain the following provision:

"Sec. 71. All acts and parts of acts enumerated in the following schedules, *and all acts and parts of acts in conflict with the provisions hereof, are hereby repealed.*" (Italics ours.)

█ We also appreciate that, when an act contains a schedule of certain acts specifically repealed, a presumption might arise that the legislature did not intend to repeal other acts not specifically mentioned. We referred to and dis-cussed this presumption in *Great Northern R. Co. v. Glover,* 194 Wash. 146, 156, 77 P. (2d) 598:

"Appellants direct our attention to the fact that acts and parts of acts are expressly repealed by §§ 100 to 102, in-clusive, chapter 53, *supra* [Laws of 1937], and by §§ 68 to 71, inclusive, in chapter 187, *supra* [Laws of 1937], and then cite authorities to the effect that, where a statute expressly repeals specific acts, there is a presumption that it was not intended to repeal others not specified.

"Notwithstanding these specific repealing sections and the absence of a specific reference to the township act, we are persuaded that this presumption has been overcome be-cause of the clear inconsistency between the township law and the new legislation relating to highways generally."

Respondents admit that before we would be justified in holding that chapter 37, Laws of 1905, was impliedly re-pealed by chapter 98, Laws of 1911, each of the following questions must be answered in the affirmative:

(a) Did chapter 98, Laws of 1911, cover the entire sub-ject matter of chapter 37, Laws of 1905?

(b) Is the later act complete in itself, and intended to supersede the prior legislation?

(c) Are the two acts inconsistent with, and repugnant to, each other?

Let us first look at chapter 37, Laws of 1905. We have hereinbefore set out the title of this act. In substance, it provides that whenever any street, lane, square, place, or alley of any city or town shall have been improved by the construction of a sidewalk, the duty, burden, and expense of "maintenance, repair and renewal" of such sidewalk shall devolve upon the property directly abutting upon that side of the street along which such sidewalk has been constructed. It further provides:

"Whenever in the judgment of that *officer or department of any such city* who, or which is or shall be, charged with the inspection and care of the sidewalks along the public streets . . . the condition of any sidewalk is such as to render the same unfit or unsafe for purposes of public travel, the *said officer or department* shall thereupon serve a notice on the owner of the property immediately abutting upon said portion of said sidewalk of the condition thereof, instructing the said owner to clear, repair, or renew the said portion of the sidewalk. The notice provided for shall be deemed sufficiently served if delivered in person to the owner of the property or his authorized agent, or by leaving a copy of such notice at the home of the owner or authorized agent, or if the owner is a non-resident by mailing a copy to his last known address, or if the owner of the property be unknown or if his address be unknown then such notice shall be addressed to the general delivery office of the city wherein the improvement is to be made. Such notice shall specify a reasonable time within which such cleaning, repairs or renewal shall be executed by the said owner, and shall state that in case the said owner shall fail to do such cleaning or to make such repairs or renewal within the time therein specified then the *said officer or department* will proceed to clean said walk or to make such repairs or renewal forthwith, and will report to the city council at its next regular meeting or as soon thereafter as possible, the date to be definitely stated, an assessment roll showing the lot or parcel of land immediately abutting on that portion of the sidewalk so improved, the cost of such improvement or repair and the name of the owner, if known, and that the council will hear any or all protests against the proposed assessment. The council shall at the time in such

notice designated or at an adjourned time or times assess the cost of such work against said property in accordance with the benefits derived therefrom, which said charge shall become a lien upon said property and shall be collected by due process of law. For the purposes of this act all property having a frontage upon the sides or margin of any street shall be deemed to be abutting property and such property shall be chargeable, as provided by this act for all costs of maintenance, repairs or renewal of any form of sidewalk improvement between the said street margin and the roadway lying in front of and adjacent to said property, and the term sidewalk, as intended for the purposes of this act, shall be taken to include any and all structures or forms of street improvement included in the space between the street margin and the roadway." (Italics ours.)

Chapter 98, Laws of 1911, contains seventy-two sections and, in our opinion, embraces the entire subject of local improvements. It is entitled: "An Act relating to local improvements in cities and towns, and repealing certain acts and parts of acts."

We stated, in *Holzman v. Spokane,* 91 Wash. 418, 420, 157 Pac. 1086, that the local improvement act of 1911 *was a general law, complete within itself, upon the subject of local improvements, including local assessments and liens thereof,* and purported to cover the whole subject matter of which it treats.

We shall now call attention to some of the irreconcilable conflicts between the two acts. The 1905 act permits the "maintenance, repair and renewal" of sidewalks to be made by the officer (in this case the commissioner of public works) in charge of the care of sidewalks. Laws of 1911, chapter 98, § 6, p. 442, was amended by Laws of 1915, chapter 168, § 6, p. 532, and by Laws of 1945, chapter 190, § 1, p. 548 (Rem. Supp. 1945, § 9357), and as amended reads in part as follows:

"Whenever the public interest or convenience may require, the council, or other legislative authority of any such city or town, is hereby authorized and empowered . . . to order sidewalks, . . . retaining walls, . . . curbing and cross walks, . . . . or other local improvement whatsoever to be constructed, reconstructed, repaired or

renewed therein . . . ; and to order any and all work to be done which shall be necessary to complete any such improvement; and to levy and collect special assessments to pay the whole or any part of the cost and expense of any such improvement."

Under the 1911 act, a sidewalk improvement can be made only after affirmative action taken by the city council.

Laws of 1911, chapter 98, § 7, p. 443 (Rem. Rev. Stat., § 9358 [P.P.C. § 401-13]), provides:

"Whenever any city or town shall make local improvements at the cost and expense, in whole or in part, or [of] property specifically benefited thereby, the proceedings for the same shall be had as provided in this act."

Laws of 1911, chapter 98, § 8, p. 443 (Rem. Rev. Stat., § 9359 [P.P.C. § 401-15]), provides:

"Any such improvement may be ordered only by ordinance of the council, or other legislative body of such city or town, *either upon petition or resolution therefor.*" (Italics ours.)

It will be noticed that, in the instant case, the commissioner of public works of the city of Tacoma, upon his own initiative and without any authorization, either by resolution or ordinance of the city council or petition of the property owners, ordered the reconstruction of the sidewalk and the construction of the curbing and retaining wall.

Section 9 of the act of 1911 (Rem. Rev. Stat., § 9360 [P.P.C. § 401-17]), permits the owners of property, to an aggregate amount of a majority of the lineal frontage upon the improvement to be made and of the area within the limits of the assessment district to be created therefor, to petition for such improvement. The act of 1905 made no such provision.

Section 10 of the 1911 act, as amended by Laws of 1929, chapter 97, § 1, p. 188 (Rem. Rev. Stat., § 9361 [P.P.C. § 401-19]), authorized the initiation of any such improvement directly by the city or town council by a resolution

". . . declaring its intention to order such improvement, setting forth the nature and territorial extent of such proposed improvement, and notifying all persons who may

desire to object thereto to appear and present such objections at a meeting of the council at the time specified in such resolution; and directing the proper board, officer or authority to submit to the council at or prior to the date fixed for such hearing the estimated cost and expense of such improvement, and a statement of the proportionate amount thereof which should be borne by the property within the proposed assessment district, and a statement of the aggregate assessed valuation of the real estate, exclusive of improvements, within said district according to the valuation last placed upon it for the purposes of general taxation . . . The resolution shall be published in at least two consecutive issues of the official newspaper of such city or town, the date of the first publication to be at least fifteen (15) days prior to the date fixed by such resolution for hearing before the city council."

The above provision conflicts with the act of 1905, which contains no provision for objections to the proposed improvement by the abutting property owners—they can only protest against the proposed assessment.

The 1905 act permits the council to adopt an assessment roll (prepared by the commissioner of public works), for the cost of such work "in accordance with the benefits derived therefrom."

Section 12 of the act of 1911 was amended by Laws of 1927, chapter 109, § 1, p. 96, and by Laws of 1931, chapter 85, § 1, p. 252 (Rem. Rev. Stat., § 9363 [P.P.C. § 401-23]), and as amended provides:

"The council or other legislative body shall have jurisdiction to proceed with any such improvement initiated by petition or resolution: *Provided,* That in any city of the first class it appears from the certificate of the board, officer, or authority designated by charter or ordinance to determine the same that the proportion of the estimated cost and expense thereof to be assessed against the property in the proposed improvement district does not exceed the assessed valuation of the real estate, exclusive of improvements thereon, within such district, according to the valuation last placed upon it for the purposes of general taxation: . . ."

Under the 1905 act, the commissioner of public works is authorized to fix in the notice to the property owners the

date of the hearing before the council *on the assessment roll.*

The 1905 act contains no provision relative to an appeal from the action of the city council, and so in this case respondents followed the procedure provided by Laws of 1911, chapter 98, § 22, p. 453 (Rem. Rev. Stat., § 9374).

While we have shown the amendments to the sections of the 1911 act referred to, in so far as the question now being considered is concerned, the effect of the act of 1911 was not changed by the subsequent amendments.

In the case of *In re Local Imp. Sewer Dist. No. 1,* 84 Wash. 565, 147 Pac. 199, this court discussed at length the effect of the act of 1911, and some of the rights accorded to property owners which they had not previously had. We desire to quote from the opinion the portion which seems to be particularly applicable to the question here being considered:

"Prior to June 7, 1911, there was no statute in force providing for direct appeal to the courts from the confirmation of local assessments by cities of the third class, to which class the city of Chehalis belongs. The remedy the property owners had against an illegal and erroneous assessment was by an action on the equity side of the court to set aside the assessment, or by way of defense, in an action by the city seeking foreclosure of the assessment lien. On that day, however, there became effective the general local improvement law of 1911 (Laws 1911, p. 441, ch. 98; 3 Rem. & Bal. Code, § 7892-1 *et seq.*), applicable to cities of the third class, as well as other cities and towns in the state, providing, among other things, in substance, that, whenever any assessment roll for local improvements is made it shall be filed with the city or town clerk; that the city council shall thereupon fix a date for the hearing of objections of property owners to the assessments sought to be so made, notice of which shall be given to the property owners, and that upon final decision of the council confirming the roll, after such revision thereof as the council may make, any owner of property deeming himself aggrieved by such assessment may appeal therefrom to the superior court, where the decision of the council may be affirmed or modified or the assessment entirely annulled in so far as the same affects the

property of the appellant. Laws of 1911, pp. 452, 453, §§ 21, 22 (3 Rem. & Bal. Code, §§ 7892-21, 7892-22).

"It is apparent from the reading of this law that the property owner has a right, both before the council and in the courts upon appeal, to be heard upon the questions of benefits flowing from the construction of the improvement to his property and the proper apportioning of benefits between his property and other property in the district. Prior to the passage of this law, the property owner was not awarded a hearing before the council in cities of the third class, nor upon direct appeal to the courts; but the law did award him an opportunity to contest in the courts the validity of an assessment sought to be made against his property, upon the ground of want of benefits as well as other grounds. The effect of this law, in so far as we are here concerned with its provisions, is only to change the method of procedure by which the property owner may assert his rights as against an erroneous or void assessment.

"The repeal provisions of this law render it plain that it supersedes all laws and methods of procedure touching local assessments by cities and towns. Section 70, Laws 1911, p. 480, provides:

" 'All rights of action under existing laws which this act in any way supersedes or repeals, if the same at the time of taking effect of this act shall not have been commenced, shall proceed under the provisions of this act.' 3 Rem. & Bal. Code, § 7892-70."

We stated in *Yakima v. Snively,* 140 Wash. 328, 330, 248 Pac. 788:

"The improvement was initiated under ch. 26, Laws of 1909, p. 38. On June 7, 1911, ch. 98, Laws of 1911, p. 441 [Rem. Code, § 9352 *et seq.*], took effect, providing *a complete new act on the subject of local improvements and assessments therefor.* By the provisions of the saving clause of the latter act, all remedial provisions contained in it superseded the existing law, and made it mandatory on municipal authorities and property owners to be governed by the laws of 1911, *supra. In re Local Improvement Sewer District No. 1,* 84 Wash. 565, 147 Pac. 199." (Italics ours.)

While it is true that Laws of 1909, chapter 26, p. 38, was specifically repealed by Laws of 1911, chapter 98, § 71, p. 481, we are of the opinion it clearly appears from § 71

that the act of 1911 also repealed all acts or parts of acts in conflict therewith.

On this question of the effect of the act of 1911, see *In re Grandview*, 118 Wash. 464, 467, 203 Pac. 988; *Lee v. Olympia*, 122 Wash. 616, 211 Pac. 883; *Town of Brewster v. Hamilton*, 138 Wash. 652, 244 Pac. 973. See, also, *State ex rel. McCoske v. Kinnear*, 145 Wash. 686, 261 Pac. 795.

In *Peterson v. King County*, 199 Wash. 106, 90 P. (2d) 729, there was presented the question of whether the definition of the terms "vehicle" and "motor vehicle," as contained in Laws of 1921, chapter 96, § 2, p. 252, or the definition of those terms contained in Laws of 1927, chapter 309, § 2, p. 767, was in force. The opinion states:

"The act of 1927, chapter 309, the title of which we have already quoted, and which, by its terms, was to be referred to as the regulation vehicle operation act, covered essentially the matters embraced within the act of 1921. *While no part of the earlier act was repealed by direct reference,* § 56 of the later law, p. 812, provided that all acts or parts of acts in conflict with its provisions were repealed." (Italics ours.)

In considering the above question, we applied the rule relative to implied repeals, as stated in *State ex rel. Spokane etc. Branch v. Justice Court*, 189 Wash. 87, 90, 63 P. (2d) 937:

"It is a settled rule that repeals by implication, although not ordinarily favored in law, are nevertheless effective when it appears that a legislative act is intended to cover the entire field of legislation upon a particular subject, or that subsequent legislation is contrary to, and inconsistent with, a former act."

While the statement last above set out is all that is quoted in the *Peterson* case from *State ex rel. Spokane etc. Branch v. Justice Court, supra,* the opinion in the latter case continues:

"The rule is comprehended in two contrastive principles expressed as follows in Ruling Case Law:

" 'Where a statute covers the whole subject matter of an earlier act, and it is evident that it was intended to be a revision of, or substitute for, the earlier act, *although it*

*contains no express words to that effect,* it operates as a repeal of the earlier act to the extent that its provisions are revised and supplied.' 25 R. C. L. 915, § 167.

" 'Except when an act covers the entire subject matter of earlier legislation, is complete in itself and is evidently intended to supersede the prior legislation on the subject, it does not by implication repeal an earlier act on the same subject unless the two acts are so clearly inconsistent and repugnant that they cannot, by a fair and reasonable construction, be reconciled and effect given to both.' 25 R. C. L. 920, § 170."

The rule was subsequently applied in, and is hereinbefore quoted in our reference to, the case of *Abel v. Diking & Drainage Imp. Dist. No. 4,* 19 Wn. (2d) 356, 363, 142 P. (2d) 1017.

We also call attention to 59 C. J. 921, 922, § 521, wherein the rule is announced relative to the repeal of a statute by a subsequent act, although the later act contains no express words to that effect.

After a consideration of the two acts here involved and the authorities applicable to the question presented, it is our conclusion that the legislature intended to, and did, by chapter 98, Laws of 1911, cover the entire subject of local improvements, in so far as any improvement with which we are here concerned is involved, and any and all improvements contemplated by the 1905 act; that the two acts are inconsistent with and repugnant to each other; that chapter 98, Laws of 1911, is a complete act in itself, and was intended to, and did, supersede all prior acts or parts of acts inconsistent therewith; and that chapter 37, Laws of 1905, was impliedly repealed by chapter 98, Laws of 1911.

While the conclusions we have reached on the first question discussed are determinative of this case, nevertheless, assuming for the purpose of argument only that chapter 37, Laws of 1905, is still in effect, we are further of the opinion that such act was never intended to, and does not, authorize the commissioner of public works of the city of Tacoma to initiate and construct the type of improvements here under consideration, under the guise of renewing or repairing an existing sidewalk.

The act of 1905 was passed in what might be termed "wooden sidewalk days." It does not require any resolution, ordinance, or other act on the part of the legislative body of a city or town, but the entire proceeding is to be initiated by the officer or department charged with the inspection and care of sidewalks. The act authorizes such officer or department to notify the owner or owners of property abutting upon a sidewalk that the same is unfit for public travel, instructing such owner to repair or renew the sidewalk, giving to such owner a reasonable time in which to make such repairs or renewals, and further notifying such owner that if such repairs or renewals are not made within the time specified, such *officer or department* will proceed to make such repairs or renewals forthwith.

It will be noticed that the entire proceedings are conducted by the officer or department referred to, with no opportunity afforded to the property owner to object to the type of renewal or repairs which may be made by such officer or department.

The act further provides that, as soon as possible after the officer or department has made such repairs or renewals, he or it shall report to the city council an assessment roll showing the lot or parcel of land abutting on the portion of the sidewalk so improved, the cost of such improvement or repair, and the name of the owner, and the council will hear any or all protests against the proposed assessment, after which the council shall assess the cost of such work against the property, in accordance with the benefits derived therefrom, which charge shall become a lien upon the property, and shall be collected by due process of law.

Again, we refer to the fact that, under this act, the legislative body of a city or town has nothing to do with the repairs or renewals made by the officer or department of the city. Such officer or department apparently has unlimited power and authority to determine the type of repair or renewal which he or it considers to be necessary, and the cost thereof, and all the city council is authorized to do is to assess the cost of such sidewalk against the property in accordance with the benefits derived therefrom.

In the instant case, it was first determined by the com-missioner of public works that the improvement would cost about $26,000; then, after work had started, the plans were entirely changed, and, as stated, the ultimate cost was approximately $61,374.35, of which amount the property owners were to pay fifty per cent, or $30,687.16. The assessed valuation of this property, exclusive of improvements, for general taxation purposes, was $12,550.

It is apparent, we think, that, if the contention of the city as to the procedure authorized by the 1905 act is sound, and this assessment is permitted to stand, it will result in a confiscation of the property involved.

There is no question but that a very considerable part of the cost of the improvement resulted from the construction of the twenty-foot retaining wall and the excavation required for it. It is admitted that this wall acts in part as a support to the street. While the wall may also act as some support for the concrete sidewalk, as we understand it the wall is a separate structure from the sidewalk, that is, they do not touch each other. In so far as we can determine, no effort was made by the city to segregate the cost of the steel reinforced retaining wall from the cost of the sidewalk improvement.

There was evidence of settling along the easterly side of Market street, and we are of the opinion that, when the testimony relative to other types of construction which could have been used in the construction of the sidewalk is considered, it might well be argued that the main purpose of the retaining wall was to give support to Market street. There was evidence that no benefit to the lots here involved would result from this improvement.

It will also be noticed that the act of 1905 authorizes the officer to notify the property owner "to clear, repair, or renew" *that portion* of the sidewalk which is unsafe or unfit for public travel. The act makes no mention of plans or specifications, or of construction or reconstruction of a sidewalk.

. In 1927, the legislature passed chapter 203, p. 294, Laws of 1927 (Rem. Rev. Stat., §§ 9332-1 to 9332-5 [P.P.C. §§ 407-21 to -29]). The title of this act is:

"An Act relating to the *construction and reconstruction of sidewalks* in cities of the first, second and third class, and other cities of equal population working under special charter, and providing for the payment therefor by the owners of abutting property." (Italics ours.)

It seems to us this act shows a legislative intent to distinguish between "construction" and "reconstruction" and the terms "repair" and "renew." This act places much greater restrictions upon the city and its agencies, where the improvement is the construction or reconstruction of a sidewalk, than did the act of 1905, which provided for repairs and renewals. The 1927 act requires that there be a resolution by the city, finding that the improvement by construction or reconstruction of a sidewalk is necessary for the public safety. It limits the cost of such construction or reconstruction, in so far as the abutting property is concerned, to fifty per cent of the valuation of such property, exclusive of improvements, according to the valuation last placed upon it for the purpose of general taxation. The act further provides:

"Sec. 5. . . . The legislative authority of any city before exercising the powers and authority herein granted shall, by proper ordinance, provide for the application and enforcement of the same within the limitations herein specified."

We also call attention to Laws of 1915, chapter 149, p. 423 (Rem. Rev. Stat., §§ 9155 to 9162 [P.P.C. §§ 407-5 to -19]). This act permits cities of the third and fourth class to *construct* sidewalks at the expense of the abutting property owners, when the public safety or convenience requires such construction. This act also requires that, if the council deems the *construction* of such sidewalk necessary,

". . . it shall by resolution order such sidewalk constructed and shall cause a notice in writing to be served upon the owner of each lot, block or parcel of land immediately abutting upon that portion and side of such street or

public place where said sidewalk is to be constructed requiring him to construct such sidewalk in accordance with such resolution."

We think it is significant that, while the acts of 1905, 1915, and 1927 make no mention of "curbs," "curbing," or "retaining walls," the act of 1911 includes both "curbing" and "retaining walls."

■ We are of the opinion the commissioner of public works was without authority, under chapter 37, Laws of 1905, to construct the type of improvements here involved. In other words, this improvement, in our opinion, is neither a repair nor renewal of the old sidewalk, within the purview of chapter 37.

It follows that the council had no authority to confirm the assessment roll filed by the commissioner of public works, or to levy any assessment under chapter 37, *supra*, against the property of respondents.

There is no question of estoppel in this case. The property owners had no knowledge of the change of plans until the assessment roll was filed by the commissioner of public works, at which time, by entering a protest, they did all they could.

■ Appellant, having erroneously attempted to proceed under chapter 37, Laws of 1905, and having made no attempt to comply with the provisions of chapter 98, Laws of 1911, is not entitled to have the property reassessed under the act of 1911.

The judgment of the trial court, setting aside the assessment roll, is affirmed.

MALLERY, C. J., BEALS, STEINERT, and ROBINSON, JJ., concur.