[No. 37754.    En Banc.    December 9, 1965.]

ROPO, INC., et al., Respondents, v. THE CITY OF SEATTLE,
Appellant.*

*Reported in 409 P.2d 148.

*A. L. Newbould* and *Jerry F. King,* for appellant.

*Brumbach & Hennessey, Raymond C. Brumbach,* and *Robert H. Lamb,* for respondents.

FINLEY, J.—Plaintiff cabaret owners instituted this taxpayer's suit for a refund of admissions tax which they allege was illegally imposed and collected by the city of Seattle. The disputed admissions tax was levied and imposed by Seattle Ordinance No. 72495, which is entitled:

> AN ORDINANCE levying an admission tax on persons paying admissions, or who are admitted free or at reduced rates to any place; fixing the amount and providing for the collection thereof; and prescribing penalties.

Section 2 of said ordinance levies a tax in the amount of 1 cent for each 20 cents paid as "admission charges." The latter term is defined in § 1 of the ordinance as follows:

> "ADMISSION CHARGE," in addition to its usual and ordinary meaning, shall include . . . a charge made for food and refreshments in any place where any free entertainment, recreation or amusement is provided.

The legislature, in enacting RCW 35.21.280, repealed a state admission tax, and provided or authorized municipalities to

> levy and fix a tax of not more than one cent on twenty cents or fraction thereof to be paid by the person who pays an admission charge to any place:  . . . .
>
> The term "admission charge" includes:
>
> . . . .
>
> (3) A charge made for food and refreshment in any place where free entertainment, recreation or amusement is provided;  . . . .

Thus, the city ordinance contains language substantially similar to language employed in RCW 35.21.280.

Plaintiffs are licensed to operate as cabaret owners under §§ 57-63 of Seattle Ordinance No. 48022 and as a Class "H" facility by the Washington State Liquor Control Board. The parties stipulated to the effect that food and both alcoholic and nonalcoholic refreshments are sold in the plaintiffs' cabarets while free entertainment is being provided cabaret patrons. It was further stipulated that all

or almost all of the plaintiffs increase the prices of their alcoholic beverages during the hours of "free" entertainment. The trial court granted a refund to the plaintiffs of amounts collected under the ordinance during the preceding 3 years, insofar as the amount of tax remitted was attributable to the gross sales of alcoholic beverages during free entertainment hours. The reasoning or theory of the trial court was to the effect that municipal excise taxes upon liquor are prohibited by the preemption provisions of the Washington State Liquor Act, RCW 66.08.120.

Actually, the keystone of the trial court's memorandum decision, and the essence of plaintiff-respondents' argument on appeal, is a legal conclusion that the tax imposed by Seattle Ordinance No. 72495 impinges upon the sale of alcoholic beverages contrary to the provisions of the Washington State Liquor Act preempting the taxation of liquor for the state. However, by interpreting the word "refreshment" (used in RCW 35.21.280 to define "admission charges") to mean nonalcoholic beverages only, the trial court held the plaintiffs were entitled to a refund of an estimated or pro rata portion of the amount of tax remitted to the city comptroller under the ordinance, and further granted an injunction against levy of the tax upon that portion of gross sales in the plaintiffs' establishments attributable to the sale of alcoholic beverages.

But we cannot agree with core reasoning of the plaintiff-respondents' legal formulation or argument: that the incidence of the admission tax imposed by Seattle Ordinance No. 72495 impinges upon or rests squarely upon the sale of alcoholic beverages. The trial court's linguistic distillation or separation of alcoholic potations from the term, "refreshment," is not persuasive, and certainly not compelling in the light of the common usage and understanding of this term. In addition, any application of (1) the admission tax-authorizing statute and (2) the levying ordinance to places where free entertainment is provided would be strained, unrealistic and bordering upon the ludicrous, if only nonalcoholic refreshment was said to be includable. It is common knowledge and patently obvi-

ous that most, in fact practically all, of the refreshments served in "night spots" or cabarets where free entertainment is provided are alcoholic. More importantly, the fundamentals of statutory construction lead us to conclude that the tax challenged here is not an "excise upon liquor" but an excise upon the person exercising the privilege of being admitted to a place where free entertainment is provided.

■ It is an elementary principle of statutory interpretation that legislative intention may be inferred from extrinsic evidence such as the legislative history of prior enactments, the legislative history of the enactment itself, the interpretation given the statute by administrative officials, etc. But the language of the statute is the point at which we begin our inquiry:

> In arriving at the intent of the legislative body, the first resort of the courts is to the context and subject matter of the legislation, because the intention of the lawmaker is to be deduced, if possible, from what is said. *Hatzenbuhler v. Harrison*, 49 Wn.2d 691, 697, 306 P.2d 745, 749 (1957).

The proscription against municipal excise taxes upon liquor is found in the Washington State Liquor Act, Laws of 1933, Ex. Ses., ch. 62, § 29, p. 190:

> No municipality or county shall have power to license the sale of, or impose an excise tax upon, liquor as defined in this act, or to license the sale or distribution thereof in any manner; . . . .

Ten years later, the legislature repealed the state admission tax and authorized municipalities to levy such a tax in Laws of 1943, ch. 80, § 1, p. 165:

> Any city or town through its legislative authority is hereby authorized to levy and fix the amount of a tax *to be paid by the person who pays an admission charge to any place,* . . . The term "admission charge" includes . . . a charge made for food and refreshments in any place where any free entertainment, recreation or amusement is provided; . . . . (Italics ours.)

The preemption provisions of the Liquor Act do not come into play unless the ordinance may be said to impose an "excise tax upon liquor." Both the statute authorizing imposition of municipal admission taxes and the Seattle ordinance enacted thereunder, characterize the tax as one upon the person paying the admission charge. While that characterization is not conclusive upon us, it is entitled to be given due consideration. *Aberdeen Sav. & Loan Ass'n v. Chase*, 157 Wash. 351, 289 Pac. 536 (1930); 51 Am. Jur. *Taxation* § 28 (1944). Furthermore, the state legislature is presumed to be familiar with its own prior enactments. *Hatzenbuhler v. Harrison*, 49 Wn.2d 691, 306 P.2d 745 (1957). Thus, the legislature was aware of the preemption of the liquor tax field by the Washington State Liquor Act at the time it authorized municipalities to levy admission taxes. We are aware of the fact that the Laws of 1943, ch. 80, authorizing municipal admission taxes, expressly repeals only the state admission tax, and no mention is made of the Washington State Liquor Act. In this connection, we have stated that the appearance of a list or schedule of acts specifically repealed might raise a presumption the legislature did not intend to repeal other acts not specifically mentioned. *Rosenthal v. Tacoma*, 31 Wn.2d 32, 195 P.2d 102 (1948). In addition, we have often stated that repeals by implication are not favored by this court. See *e.g. Hennessey Funeral Home, Inc. v. Dean*, 64 Wn.2d 985, 395 P.2d 493 (1964). However, another side of the coin is the universal principle that

> inconsistency between statutes upon a given subject is never presumed, but such interpretation or construction should be adopted as will harmonize all acts upon the subject, if reasonably possible. *Kruesel v. Collin*, 171 Wash. 200, 17 P.2d 854 [1933]; 1 Sutherland, Statutory Construction (3d ed.) 470, § 2015; 50 Am. Jur. *Statutes* § 363 [1944]. *Lindsey v. Superior Court*, 33 Wn.2d 94, 102, 204 P.2d 482, 486 (1949).

A reasonable construction of the tax-authorizing statute—and one which negates the alleged inconsistency—is that the legislature intended the incidence of the authorized

tax to be the privilege of being admitted to an establishment where free entertainment is provided. That incidence is specifically indicated in both the statute and the ordinance, and we see no reason to adopt a construction of the statute which would create an inconsistency by virtue of its judicial characterization as an "excise upon liquor."

Plaintiff-respondents' contentions are appealing, but they have not persuaded us respecting the existence of any improper nexus between the measure of the tax (gross sales during free entertainment hours) and what they allege to be the *incidence* of the tax—the sale of liquor. The character of a particular tax is not determined by the mode adopted for its payment. *Maine v. Grand Trunk Ry.*, 142 U.S. 217, 35 L. Ed. 994, 12 Sup. Ct. 121, 163 (1891). The taxable occurrence here is the admission of the place of entertainment, and is only measured by the gross sales of the plaintiffs' establishments. It seems significant to us that the plantiff-respondents themselves, in the conduct of their businesses, recognize an occurrence, transaction on relationship with patrons during free entertainment hours by raising the price of "refreshment," *i. e.,* alcoholic beverages. The taxes remitted to the city of Seattle were not "excises upon liquor," but legislatively-authorized levies by the municipality upon the privilege of being admitted to a place where free entertainment is provided.

The judgment of the trial court is reversed.

HILL, WEAVER, OTT, HAMILTON, and HALE, JJ., concur.

ROSELLINI, C. J. (dissenting)—In 1933, the Washington State Liquor Control Act was enacted by the state legislature. Known and cited as RCW Title 66, the act contains the following provision which relates to the issues of this case.

RCW 66.08.120

No municipality . . . shall have power to license the sale of, or impose an excise tax upon, liquor as defined in this title, or to license the sale or distribution thereof in any manner . . . .

It cannot be disputed that the tax imposed by Seattle Ordinance 72495 is computed on a percentage of the respondents' gross sales of liquor. How can it be said that the tax is a tax on the person, when each person pays a different tax, depending on the amount of liquor and refreshments which he purchases? I do not think that the city can, by simply defining the tax as a tax on persons, change the true incidence of the tax. Common sense decrees that it is a tax on purchases of liquor; and such a tax is clearly forbidden by RCW 66.08.120.

The trial court recognized this fact but was then confronted with the problem of reconciling the provisions of RCW 66.08.120 with those of RCW 35.21.280, which provides:

> Every city and town may levy and fix a tax of not more than one cent on twenty cents or fraction thereof to be paid by the person who pays an admission charge to any place: *Provided*, no city or town shall impose such tax on persons paying an admission to any activity of any elementary or secondary school. This includes a tax on persons who are admitted free of charge or at reduced rates to any place for which other persons pay a charge or a regular higher charge for the same privileges or accommodations. The city or town may require anyone who receives payment for an admission charge to collect and remit the tax to the city or town.
>
> The term "admission charge" includes:
>
> . . . .
>
> (3) A charge made for food and refreshment in any place where free entertainment, recreation or amusement is provided . . . .

Since the legislature did not define the term "refreshment," the courts must look elsewhere for the intended meaning. Repeals by implication, of course, are not favored, and if "refreshment" is regarded as including alcoholic beverages, RCW 35.21.280 effects a partial repeal of RCW 66.08.120. Merriam-Webster, Third New International Dictionary, defines the word as "2 a. something (as food, drink) that refreshes: means of restoration or reanimation b. refreshments *pl*: a light meal: Lunch . . . ." No

mention is made of alcoholic beverages, and I do not think it is generally conceded that they "refresh." Rather, they intoxicate, and if consumed in sufficient quantities, debilitate.

Of course, the term in its widest meaning includes alcoholic drinks, but I think that in endeavoring to reconcile this statute with the liquor control act, a narrower meaning must be ascribed to the word. The majority argue that an absurd result is achieved if the city is allowed to tax sales of nonalcoholic beverages in places where free entertainment is provided, but is forbidden to tax sales of alcoholic beverages in such places. However absurd this result may appear, it accords with the legislative prohibition against taxation of such sales by cities.

I do not think it is any more difficult to adopt a definition of "refreshment" that does not include alcoholic beverages than it is to accept the proposition that a tax measured by the amount of refreshments consumed by an individual is a tax on the person. It is just as easy to say that a tax measured by the amount of property owned by a man is a tax on his person. One or the other of these two logically not-quite-acceptable propositions must be accepted by the court. That accepted by the trial court gives effect to both statutes; therefore I believe it is the more reasonable.

In my opinion, the holding of the trial court that the tax is illegal was correct. If the tax were measured by the amount by which the price of beverages is increased during entertainment hours, a different question would be presented, and I would be inclined to say that it did not offend the provisions of RCW 66.08.120.

I do not think that the plaintiffs are entitled to any relief beyond a declaratory judgment or restraining order, however. They were not required to and did not pay the tax but merely collected it and remitted it to the city. They do not contend that they are suing on behalf of the actual taxpayers and will pass the refund on to them. Consequently, to refund the taxes to them would constitute an unjust enrichment. *Shannon v. Hughes & Co.*, 270 Ky. 530, 109 S.W.2d 1174.

I would affirm the trial court's holding that the taxes were illegally collected but would reverse its order requiring a refund to the plaintiffs.

HUNTER, J., concurs with ROSELLINI, C. J.

DONWORTH, J., concurs in the result of the dissent.

---

February 28, 1966. Petition for rehearing denied.