[No. 51493-8-I.   Division One.   August 23, 2004.]

HARTSON PARTNERSHIP, *Respondent*, v. JORGE MARTINEZ, ET AL., *Appellants*.

*Dan R. Young*, for appellants.

*David J. James, Jr.* (of *AvantLaw, P.L.L.C.*), for respondent.

AGID, J. — Jorge and Rosina Martinez were evicted from a mobile home park. They appeal, arguing that the park management failed to mediate the dispute as required by Washington's Mobile Home Landlord-Tenant Act (MHLTA), chapter 59.20 RCW. But under the plain language of the statute, we hold that MHLTA requires mediation only when the landlord evicts the tenant for failing to cease a substantial, repeated, or periodic violation of park rules and regulations. Here, the park management evicted the Martinezes for receiving three notices for failure to comply with rules and regulations within a 12-month period. Under that section of the statute, the landlord is not required to mediate. We therefore affirm.

## FACTS

Beginning in 1996, Jorge and Rosina Martinez were tenants at the Town and Country Villa, a mobile home park owned and operated by Hartson Partnership. The Martinezes owned their mobile home and leased the property on which it was located in the park. Between January and May 1998, Hartson issued 11 notices to comply or vacate for violations of the park's rules and regulations to the Martinezes. On May 5, 1998, Hartson issued a notice of eviction on the ground that the Martinezes' "repeated failure to comply with the material terms of [their] rental agreement and park rules has caused the Landlord to serve [them] with three (3) Notices to Comply with Rules and Regulations and Rental Agreement within the last twelve month period." The notice required the Martinezes to vacate by May 31, 1998.

In a letter dated May 21, 1998, Hartson instructed the Martinezes to contact Hartson's attorney. The letter said that the attorney would suggest that the parties mediate their dispute and failure to contact the attorney would result in eviction proceedings. In a letter dated May 29, 1998, Hartson's attorney formally offered to participate in mediation. The letter stated, "Although not legally required to make this offer of mediation, it is our desire to resolve this situation without resort to eviction. A translator can be arranged to facilitate the mediation." The attorney asked the Martinezes to participate in mediation or vacate the premises by June 8, 1998.

Having received no response from the Martinezes, Hartson began an unlawful detainer action on July 9, 1998. In their defense, the Martinezes argued that the management failed to properly and timely mediate the matter as required by statute. Hartson responded that it was not legally obligated to mediate the dispute and, even if it were, it offered to mediate, but the Martinezes never responded. After a bench trial, the court concluded Hartson was legally obligated to offer mediation, but because the Martinezes failed to participate, they waived their rights. The court ruled that the Martinezes were in unlawful detainer of the premises and that Hartson was entitled to a writ of restitution. The Martinezes appeal.

## DISCUSSION

### I. *RCW 59.20.080's Mediation Requirement*

■ The Martinezes argue that Hartson's offer to mediate was improper and untimely. First, they argue MHLTA requires a landlord to offer mediation each time it issues a rule violation notice, rather than after the notice of eviction. Second, they assert that any attempt Hartson made to submit the matter to mediation was untimely because it issued the last notice to comply on May 3, 1998, but waited until May 29, 1998, to offer mediation. And finally, they contend Hartson violated the statute's mediation require-

ment by suggesting that mediation was not legally required. But these arguments cannot be persuasive if the Act does not require mediation in these circumstances. Thus, we must first determine the scope of MHLTA's mediation requirement. We hold that it does not require mediation in this case.[1]

Under MHLTA, a landlord may terminate a tenancy only for one or more of 13 enumerated reasons.[2] These reasons, listed under section (1) of RCW 59.20.080, are: (a) substantial, repeated, or periodic violation(s) of the mobile home park's rules and failure to cease these violations, (b) nonpayment of rent, (c) the tenant's conviction of a crime that threatens the health, safety, or welfare of the tenants, (d) the tenant's failure to comply with local ordinances and state laws, (e) change of the park's land use, (f) criminal activity that threatens the health, safety, or welfare of the tenants, (g) a material misstatement in the tenant's application for tenancy, (h) the tenant's receipt of three 15-day notices to comply or vacate within a 12-month period, (i) the tenant's failure to comply with tenant obligations imposed by municipal, county, and state codes, (j) disorderly or substantially annoying conduct that destroys others' rights to peaceful enjoyment and use of the premises, (k) creating a nuisance that materially affects the health, safety, and welfare of other tenants, (l) "[a]ny other substantial just cause that materially affects the health, safety, and wel-

---

[1] The trial court concluded that mediation was required but that the Martinezes waived their right to mediate by failing to respond to Hartson's letters. The Martinezes dispute only the court's finding that they waived their right; they do not dispute the court's conclusion that mediation was required. But Hartson argues that this conclusion was incorrect, and we may consider this argument. *Amalgamated Transit Union Local 587 v. State*, 142 Wn.2d 183, 202, 11 P.3d 762, 27 P.3d 608 (2000) (citing *Tellevik v. 31641 W. Rutherford St.*, 120 Wn.2d 68, 89, 838 P.2d 111 (1992)) (quoting *Peterson v. Hagan*, 56 Wn.2d 48, 52, 351 P.2d 127 (1960)) (citing *City of Tacoma v. Taxpayers of City of Tacoma*, 108 Wn.2d 679, 685, 743 P.2d 793 (1987)) ("Failure to cross-appeal an issue generally precludes its review on appeal." But a respondent " 'need not cross-appeal in order to urge any additional reasons in support of the judgment, even though rejected by the trial court . . . .' " But where there is no cross appeal, we will not grant additional relief on appeal.).

[2] RCW 59.20.080(1).

fare" of other tenants, and (m) failure to pay rent three or more times in a 12-month period.[3]

Section (2) of RCW 59.20.080 states:

Within five days of a notice of eviction as required by subsection (1)(a) of this section, the landlord and tenant shall submit any dispute to mediation. The parties may agree in writing to mediation by an independent third party or through industry mediation procedures. If the parties cannot agree, then mediation shall be through industry mediation procedures. A duty is imposed upon both parties to participate in the mediation process in good faith for a period of ten days for an eviction under subsection (1)(a) of this section. It is a defense to an eviction under subsection (1)(a) of this section that a landlord did not participate in the mediation process in good faith.[4]

Subsection (1)(a) of the statute states that a landlord may terminate a tenancy for

[s]ubstantial violation, or repeated or periodic violations of the rules of the mobile home park as established by the landlord at the inception of the tenancy or as assumed subsequently with the consent of the tenant or for violation of the tenant's duties as provided in RCW 59.20.140. The tenant shall be given written notice to cease the rule violation immediately. The notice shall state that failure to cease the violation of the rule or any subsequent violation of that or any other rule shall result in termination of the tenancy, and that the tenant shall vacate the premises within fifteen days: PROVIDED, That for a periodic violation the notice shall also specify that repetition of the same violation shall result in termination: PROVIDED FURTHER, That in the case of a violation of a "material change" in park rules with respect to pets, tenants with minor children living with them, or recreational facilities, the tenant shall be given written notice under this chapter of a six month period in which to comply or vacate.[5]

---

[3] *Id.*

[4] RCW 59.20.080(2).

[5] RCW 59.20.080(1)(a).

The Martinezes were not evicted under subsection (1)(a). Instead they were evicted under subsection (1)(h), which provides that a landlord may evict a tenant

> [i]f the landlord serves a tenant three fifteen-day notices within a twelve-month period to comply or vacate for failure to comply with the material terms of the rental agreement or park rules. The applicable twelve-month period shall commence on the date of the first violation.[6]

The issue before us then is whether section (2)'s mediation requirement applies to evictions based on subsection (1)(h).

Interpretation of a statute is a question of law that we review de novo.[7] Our goal is to effectuate the legislature's intent and purpose as it is expressed in the act.[8] In ascertaining legislative intent, we must look to the statutory scheme as a whole.[9] When interpreting a statute, we must first determine whether its language is ambiguous; that is, whether it is capable of more than one reasonable interpretation.[10] If the language is plain and unambiguous, we ascertain the statute's meaning from the statute itself.[11] But if it is ambiguous or unclear, we may look to legislative history to discern legislative intent.[12]

---

[6] RCW 59.20.080(1)(h).

[7] *In re Impoundment of Chevrolet Truck*, 148 Wn.2d 145, 154, 60 P.3d 53 (2002) (citing *Franklin County Sheriff's Office v. Sellers*, 97 Wn.2d 317, 325, 646 P.2d 113 (1982), *cert. denied*, 459 U.S. 1106 (1983)).

[8] *State v. Grays Harbor County*, 98 Wn.2d 606, 607, 656 P.2d 1084 (1983) (citing *In re Pers. Restraint of Lehman*, 93 Wn.2d 25, 27, 604 P.2d 948 (1980)).

[9] *Auto. Drivers & Demonstrators Union Local No. 882 v. Dep't of Ret. Sys.*, 92 Wn.2d 415, 420, 598 P.2d 379 (1979) (citing *Hartman v. State Game Comm'n*, 85 Wn.2d 176, 532 P.2d 614 (1975)), *appeal dismissed, cert. denied*, 444 U.S. 1040 (1980).

[10] *Edelman v. State ex. rel. Pub. Disclosure Comm'n*, 116 Wn. App. 876, 882-83, 68 P.3d 296 (2003) (citing *Vashon Island Comm. for Self-Gov't v. Wash. State Boundary Review Bd. for King County*, 127 Wn.2d 759, 771, 903 P.2d 953 (1995)), *review granted*, 150 Wn.2d 1025 (2004).

[11] *Grays Harbor County*, 98 Wn.2d at 607 (citing *Lehman*, 93 Wn.2d at 27; *Garrison v. State Nursing Bd.*, 87 Wn.2d 195, 196, 550 P.2d 7 (1976)).

[12] *Id.* at 607-08 (citing *Whitehead v. Dep't of Soc. & Health Servs.*, 92 Wn.2d 265, 268, 595 P.2d 926 (1979); *Ropo, Inc. v. City of Seattle*, 67 Wn.2d 574, 577, 409 P.2d 148 (1965); *Garrison*, 87 Wn.2d at 196).

■■ In this case, section (2) is not ambiguous because it specifically states that it applies only to notices of eviction under subsection (1)(a). And subsection (1)(a) specifically requires a 15-day notice to cease the violation or vacate the premises. In addition, section (2) provides that failure to mediate subsection (1)(a) in good faith is "a defense to an eviction under subsection (1)(a)."[13] It would not make sense to hold that section (2) mandates mediation for evictions under (1)(b) through (1)(m) when a landlord's failure to mediate in good faith is a defense *only* for evictions under (1)(a). Because section (2) refers solely to notices of eviction and evictions under 1(a), we cannot read it to apply to the other 12 subsections of the statute.

And while we need not resort to legislative history, our conclusion that section (2) applies only to subsection (1)(a) is consistent with the legislature's intent as indicated by changes it made to the statute in 1984 and 1993. Before 1984, a landlord could terminate a tenancy for the reasons listed in subsections (1)(a) through (1)(e). What was then section (2) permitted a landlord to terminate a tenancy without cause as long as the landlord gave sufficient notice and was not terminating the tenancy for an illegal reason.[14] The statute contained no mediation requirement until 1984, at which point the legislature added section (3), which stated that "[w]ithin five days of a notice of eviction as required by *subsection (1)(a) or (2)* of this section, the landlord and tenant shall submit any dispute, including the decision to terminate the tenancy without cause, to mediation. . . ."[15] Thus, when the legislature added the mediation provision, it specifically limited that requirement to evictions under subsection (1)(a) and without-cause evictions under section (2). In 1993, the legislature added subsections (1)(f) through (1)(m) and removed the eviction-without-

---

[13] RCW 59.20.080(2).

[14] Former RCW 59.20.080 (1983).

[15] Laws of 1984, ch. 58, § 4(3) (emphasis added).

cause provision that was then section (2).[16] Because the legislature removed that provision, the mediation requirement applied only to subsection (1)(a). That the legislature removed section (2), left subsection (1)(a), and did not add any of the other grounds for eviction to the mediation section suggests that it intended the mediation provision to apply only to evictions under subsection(1)(a).

We recognize that mediation would often serve the best interests of landlords and tenants, regardless of the grounds for the eviction. And requiring mediation only in this very limited circumstance enables landlords to bypass the mediation requirement by evicting under alternate sections of the statute. But whatever we may think of this as public policy, we may not rely on policy considerations to interpret a statute when the statute's language clearly indicates a contrary legislative intent.[17] Therefore, we hold that MHLTA does not impose a mediation requirement on landlords who evict tenants under subsection (1)(h).

II. *Attorney Fees*

Because we affirm the trial court's order and judgment, the Martinezes are not the prevailing party and thus are not entitled to attorney fees at trial or on appeal. Hartson also requests attorney fees on appeal. Under RAP 18.1(a), we may award attorney fees on appeal if an applicable law grants that right. Under RCW 59.20.110, the prevailing party in a MHLTA action is entitled to reasonable attorney fees and costs. Therefore, we award attorney fees and costs to Hartson.

We affirm.

KENNEDY and SCHINDLER, JJ., concur.

Reconsideration denied October 6, 2004.

Review denied at 154 Wn.2d 1010 (2005).

---

[16] LAWS OF 1993, ch. 66, § 19.

[17] *State v. Bays*, 90 Wn. App. 731, 735, 954 P.2d 301 (1998) (citing *State v. Gettman*, 56 Wn. App. 51, 54, 782 P.2d 216 (1989); *State v. Williams*, 62 Wn. App. 336, 338, 813 P.2d 1293, *review denied*, 117 Wn.2d 1027 (1991)).