[No. 42566.     En Banc.     August 2, 1973.]

MIKE GREENWOOD et al., *Petitioners,* v. STATE BOARD FOR COMMUNITY COLLEGE EDUCATION et al., *Respondents.*

*Owens, Johnson & Weaver* and *F. Parks Weaver, Jr.,* for petitioners.

*Slade Gorton, Attorney General,* and *Kenneth P. Short, Special Assistant,* for respondents.

WRIGHT, J.—This is an original application for a writ of mandamus directed to the State Board for Community College Education (state board) and its administrative director, as well as to the Clark College Board of Trustees (local board) and its president. By this writ, relators ask the Supreme Court to direct the above local board to honor employment contracts executed June 1, 1972 by the president of Clark College with certain academic employees, which contracts incorporate a 5 percent salary increase. Relators also seek to have the Supreme Court direct the above state board to reallocate certain funds cut from the operating budget of the local board—such funds representing a 2 percent reduction in contract salaries.

On May 26, 1971, the acting administrative director of the state board issued a memorandum to all community college districts and community college presidents informing them that no money had been provided for salary increases by the legislature. This memorandum also suggested that efforts to increase salaries should be resisted.

Thereafter, the 1972 legislature provided for a 3 percent cost-of-living increase, effective September 1, 1972.

In the spring of 1972, the Clark College Faculty Association entered into negotiations with the local board in accordance with RCW 28B.52. On March 31, 1972, either prior to or during these negotiations, the administrative director of the state board issued guidelines to all community col-

lege districts regarding administration of the salary increase fund pursuant to his authority under RCW 28B.50.060 and RCW 28B.50.090. Such guidelines instructed the local boards that salary increases were not to exceed 3 percent.

On May 23, 1972, the administrative director of the state board issued another memorandum to all community college districts and community college presidents, requesting each local board to remain within the 3 percent salary increase appropriation and to refrain from using local funds for additional salary increases.

On June 1, 1972, the state board unanimously ratified the actions of the administrative director with respect to the salary increase guidelines. Also on June 1, 1972, the local board issued employment contracts to the academic employees incorporating a 5 percent salary increase. Immediately, on the same day, all the contracts were signed by the president of the college and accepted by the academic employees.

On July 13, 1972, the state board adopted salary and appropriation guidelines. And, on July 19, 1972, the administrative director for the state board notified the president of Clark College to reduce his operating budget by $28,896 (approximately 2 percent) because salary increases for academic employees exceeded the 3 percent guideline.

By letter dated July 21, 1972, the president of Clark College notified all members of the local board and the president of the faculty association that salaries of faculty would be reduced by 2 percent (leaving a salary increase of 3 percent) and that the disputed 2 percent would be placed in escrow until litigation had settled the matter.

The attorney general refused to institute suit against the state board to prohibit it from cutting Clark College's operating budget by 2 percent, thereby causing a 2 percent reduction in contract salaries. This suit subsequently ensued.

In considering this matter, an examination must be made of the pertinent portions of the statutory scheme set forth

by the legislature for the administration of the state community college system.

The state board is a state agency created pursuant to RCW 28B.50.050 and it possesses the powers and duties granted pursuant to RCW 28B.50.090. The local board is comprised of the trustees of a given community college district as defined by RCW 28B.50.030 and as created by RCW 28B.50.100 with powers and duties granted pursuant to RCW 28B.50.140. Under RCW 28B.52.030, the faculty\ association is authorized to represent its membership in negotiations with the local board concerning proposed community college policies relating to, but not limited to, salaries and salary schedules.

RCW 28B.50.140(3) provides that each local board, among other things, shall employ faculty members as may be necessary or appropriate and fix their salaries and duties. And RCW 28B.50.855 further provides that each local board shall provide each faculty member, immediately upon employment, with a written agreement delineating the terms of employment.

Likewise, the state board has certain specific duties and powers given to it regarding budgetary matters. Under RCW 28B.50.090(1), the state board is to review the budgets prepared by the local boards, prepare a single budget for the support of the state system of community colleges, and submit this budget to the Governor as provided in RCW 43.88.090. In addition, the state board, pursuant to RCW 28B.50.090(2), is to establish guidelines for the disbursement of funds; as well as to receive and disburse such funds for the maintenance, operation and capital support of the community college districts in conformance with the state and district budgets, and in conformance with RCW 43.88.

■■ In construing a statute, the court seeks to find the legislative intent, and attempts to give effect to the legislative purpose. *Amburn v. Daly*, 81 Wn.2d 241, 501 P.2d 178 (1972); *State v. Zornes*, 78 Wn.2d 9, 475 P.2d 109 (1970). Legislative intent is to be derived from the statute

as a whole and not from a single sentence or solitary paragraph. *State ex rel. Tarver v. Smith,* 78 Wn.2d 152, 470 P.2d 172 (1970), *cert. denied,* 402 U.S. 1000, 29 L. Ed. 2d 166, 91 S. Ct. 2175 (1971). Thus, in interpreting statutes, legislative intent is to be ascertained from the statutory text as a whole, interpreted in terms of the general purpose of the act. *Guinness v. State,* 40 Wn.2d 677, 246 P.2d 433 (1952); *In re Estate of Bracken,* 56 Wn.2d 17, 351 P.2d 151 (1960); *Groves v. Meyers,* 35 Wn.2d 403, 213 P.2d 483 (1950). The above rule of statutory interpretation is especially applicable to the present case since RCW 28B.98.040 specifically states that the provisions of RCW 28B are to be construed in pari materia. Thus, words should be read to give effect to all the language used and to the purpose of the act. *Cramer v. Van Parys,* 7 Wn. App. 584, 500 P.2d 1255 (1972).

The purpose of the community college act, RCW 28B.50, as set out in RCW 28B.50.020, is essentially the establishment of a *single* and independent system of community colleges. Under RCW 28B.50.020(3), the legislature provides the administration for this system will be by state and local boards created under the community college act. RCW 28B.50.090 provides that the state board shall have general supervision and control over the state system of community colleges. The state board has the responsibility to prepare a single budget for the support of the entire community college system with the power to review budgets prepared by the local boards (RCW 28B.50.090(1)). In addition, the state board has the power to establish guidelines for the disbursement of funds and the power to receive and disburse funds for the maintenance, operation, and capital support of the community colleges (RCW 28B.50.090(2)). RCW 28B.50.090(10) allows the state board to exercise any other powers, duties, and responsibilities necessary to carry out the purposes of the chapter in question.

■ ■ The power of the state board to review budgets prepared by the local boards includes the power to amend and modify. Words in a statute are to be given their usual

and ordinary meaning. *Bixler v. Hille,* 80 Wn.2d 668, 497 P.2d 594 (1972); *State ex rel. Beam v. Civil Serv. Comm'n,* 77 Wn.2d 951, 468 P.2d 998 (1970). In *Webster's Third New International Dictionary* (1968), the verb "review" is defined as:

> 5: to go over or examine critically or deliberately: . . . b: to go over with critical examination in order to discover excellences or defects;

The noun "review" is defined as:

> 1: a looking over or examination with a view to amendment or improvement

■■ With regard to the disbursement of funds, the state board has two distinct powers. It has the power to establish disbursement guidelines and the power to receive and disburse funds. RCW 28B.50.090(2). The guidelines were issued prior to the time the local board sought to contractually obligate itself to a 5 percent salary increase for faculty members. RCW 43.88.010 requires the state board to disburse funds in a manner which promotes effective budget administration, and in a manner consistent with amended local board budgets and state board guidelines. RCW 28B.50.090(2).

Laws of 1971, 1st Ex. Sess., ch. 275, § 95 provides that it is unlawful for a state agency to incur obligations in excess of approved allotments. Likewise, RCW 43.88.130 provides that it is unlawful for a state agency to expend or contract to expend or incur any liability in excess of the amounts appropriated for that purpose. Therefore, the employment contracts of the academic employees, as to the 5 percent salary increase, are illegal contracts, and, as such, are unenforceable to that extent. It is the policy of the law not to enforce an illegal contract. *Waring v. Lobdell,* 63 Wn.2d 532, 387 P.2d 979 (1964).

A further question is whether the local board, regardless of the above holding, may use "local funds" for salary increases.

At its April 24, 1972 meeting, the local board approved a

plan whereby the 5 percent salary increase was to be paid by application of the 3 percent cost-of-living increase appropriated by the legislature and by taking 2 percent from local funds which are not specifically appropriated by the legislature. There are two categories of local funds—nonbudgeted local funds and budgeted local funds. Monies in each of the nonbudgeted local funds cannot be used for anything other than an expenditure related to that fund's particular service or program, and are not available for salaries. Budgeted local funds are subject to the budget planning process applicable to state agencies and are not available for salaries.

Therefore, relators' writ of mandamus is hereby denied.

HALE, C.J., FINLEY, ROSELLINI, HUNTER, HAMILTON, STAFFORD, UTTER, and BRACHTENBACH, JJ., concur.

Petition for rehearing denied October 18, 1973.