[No. 46939–3. En Banc. December 31, 1980.]

GREEN RIVER COMMUNITY COLLEGE, ET AL, *Respondents,* v. HIGHER EDUCATION PERSONNEL BOARD, ET AL, *Petitioners.*

*Slade Gorton, Attorney General,* and *Clifford D. Foster, Assistant,* for petitioner Higher Education Personnel Board, et al.

*Dean A. Floyd,* for petitioner Washington Federation of State Employees.

*Audrey B. Eide,* for petitioner Washington Public Employees Association.

*Slade Gorton, Attorney General,* and *David A. Saraceno* and *Stuart Allen, Assistants,* for respondents.

WILLIAMS, J.—This is another in a series of cases involv-

ing the scope of the rule–making authority of an administrative agency. In this case, petitioners Higher Education Personnel Board (HEP Board), Washington Federation of State Employees (WFSE), and Washington Public Employees Association (WPEA) challenge a Court of Appeals decision which held that the HEP Board exceeded its power when it promulgated a rule providing for binding arbitration of a collective bargaining impasse and designating itself as arbitrator.

The facts are simple and undisputed. Three community colleges, Green River, Grays Harbor, and Lower Columbia, reached impasses in labor negotiations with employee representatives. Pursuant to WAC 251–14–100(1), the respective employee representatives submitted the impasse issues to the HEP Board for mediation. When mediation proved unsuccessful, the employee representatives sought arbitration pursuant to WAC 251–14–110(1) and (3), which provide:

> (1) When the director or designee is unable to resolve the collective bargaining impasse, the institution or the certified exclusive representative may submit such impasse to the board for arbitration.
>
> . . .
>
> (3) The board shall hold such hearings which may be conducted in the same manner as provided for appeals from layoffs, demotion, suspensions, reductions and dismissals, and the decision of the board shall be final and binding.

In response, the colleges filed an action seeking a declaratory judgment that the HEP Board is without authority to mediate or arbitrate impasse issues arising from the collective negotiations process. Shortly after the action was filed, the WFSE and the WPEA were joined as additional defendants. Upon cross motions for summary judgments, the trial court granted defendants' motion and upheld the WAC rules, concluding in a lengthy and considered opinion that the HEP Board did possess the authority to promulgate rules permitting it to mediate and arbitrate impasse issues. In an opinion filed December 28, 1979, the Court of

Appeals reversed, holding that the challenged rules were invalid absent a more specific delegation of authority from the legislature. By an order amending opinion filed February 27, 1980, however, the court held that the HEP Board did have the authority to *mediate* impasse issues because mediation "does not vest the HEP Board with resolution authority beyond verbal suasion." *Green River Community College v. Higher Educ. Personnel Bd.,* 25 Wn. App. 370, 376, 604 P.2d 530 (1979). However, the decision appeared to reaffirm the earlier holding that the arbitration rule exceeded the HEP Board's authority. *Green River,* at 376.

The opinion left unanswered the question of whether the HEP Board was empowered to provide for binding arbitration by a third party arbitrator, rather than designating itself as arbitrator, as WAC 251–14–110(1) specifies. This confusion is evident in footnote 4 of the amended opinion of the Court of Appeals, which reads as follows:

> In recognizing the significance of the Higher Education Personnel Board's (HEP Board) authority to generate rules of basis and procedure for collective negotiations, we note that under RCW 28B.16.100(12) the HEP Board may promulgate rules identifying impasse issues and when those issues must be subjected to binding arbitration. We do not, however, perceive the terms "basis" and "procedure" to be a delegation of discretionary authority entitling the HEP Board to decide the merits of a collective bargaining dispute. Nowhere in RCW 28B.16.100 is the HEP Board given discretionary authority to do other than provide for a uniform system for the state's higher education institutions. Contrary to the HEP Board's argument, promulgation of rules regarding the basis of collective negotiations does not convey discretionary authority over a specific agreement's substance. *Without deciding the propriety of any specific regulation, we are inclined to believe that the HEP Board could promulgate rules whereby arbitration is required in the event of a bargaining impasse.* However, the HEP Board's involvement is limited to designating a uniform procedure in which an impartial arbitration panel is elected by the bargaining parties. In the event a party refuses to comply with such a good faith bargaining procedure, its

actions would be subject to scrutiny as an unfair labor practice under RCW 28B.16.230 and its related sections. (Italics ours.) *Green River,* at 375.

All petitioners sought review of that portion of the Court of Appeals decision which invalidated WAC 251–14–110(1). The colleges did not file a cross petition on the mediation question and have apparently abandoned their earlier contention that the HEP Board has no authority to promulgate a mediation rule.

■ Certain well settled principles govern the scope of an administrative agency's rule–making authority. First, an agency has only those powers either expressly granted or necessarily implied from statutory grants of authority. *Anderson, Leach & Morse, Inc. v. State Liquor Control Bd.,* 89 Wn.2d 688, 694, 575 P.2d 221 (1978). Second, an agency does not have the power to promulgate rules that amend or change legislative enactments. *Fahn v. Cowlitz County,* 93 Wn.2d 368, 383, 610 P.2d 857 (1980). Third, rules may "'fill in the gaps'" in legislation if such rules are "necessary to the effectuation of a general statutory scheme." *Hama Hama Co. v. Shorelines Hearings Bd.,* 85 Wn.2d 441, 448, 536 P.2d 157 (1975). Fourth, administrative rules adopted pursuant to a legislative grant of authority are presumed to be valid and should be upheld on judicial review if they are reasonably consistent with the statute being implemented. *Fahn,* at 374. Fifth, a party attacking the validity of an administrative rule has the burden of showing compelling reasons that the rule is in conflict with the intent and purpose of the legislation. *Weyerhaeuser Co. v. Department of Ecology,* 86 Wn.2d 310, 314–17, 545 P.2d 5 (1976).[1]

---

[1]Moreover, we have held that the legislature may delegate its legislative power if two conditions are met: (1) the legislature must "define in general terms what is to be done and the instrumentality or administrative body which is to accomplish it . . ." *Barry & Barry, Inc. v. Department of Motor Vehicles,* 81 Wn.2d 155, 159, 500 P.2d 540 (1972); and (2) "procedural safeguards [must] exist to control arbitrary administrative action and any administrative abuse of discretionary power." (Italics omitted.) *Barry & Barry, Inc.,* at 159. But the question before us is not

■ In determining legislative intent, the judiciary's task is made much easier when the words of the statute are clear and unambiguous.[2] When the statutory language is plain, the statute is not open to construction or interpretation. *Allen v. Employment Security Dep't,* 83 Wn.2d 145, 148, 516 P.2d 1032 (1973); *Kenworthy v. Bolin,* 17 Wn. App. 650, 654, 564 P.2d 835 (1977). *See also Fecht v. Department of Social & Health Servs.,* 86 Wn.2d 109, 111, 542 P.2d 780 (1975).

Although the colleges urge that the language of RCW 28B.16.100(12) is unambiguous, we agree with the trial judge that this is not the case. Nothing in the statute on its face tells us whether the legislature has authorized the HEP Board to promulgate a rule for mandatory arbitration. In order to determine the legislature's intent under such circumstances, we must construe the statute by evaluating such indicia as the legislative history of the enactment of the statutes, and of subsequent amendments thereto, the interpretation given the statute by administrative agencies, and the expressions of legislative purpose, if any. *See Ropo, Inc. v. Seattle,* 67 Wn.2d 574, 577, 409 P.2d 148 (1965).

The legislature has declared the purpose of the State Higher Education Personnel Law, RCW 28B.16, in the following language:

The interests of state institutions of higher education

---

whether the legislature has successfully carried out an intent to delegate a specific authority, as in *Barry & Barry, Inc.,* but whether the legislature even intends that the administrative agency should possess the particular authority. In any event, this issue was neither raised in the briefs nor argued by any of the parties here, in the trial court, or in the Court of Appeals.

[2]The pertinent statute in this case reads as follows:

"The higher education personnel board shall adopt rules, consistent with the purposes and provisions of this chapter and with the best standards of personnel administration, regarding the basis and procedures to be followed for:
". . .
"(12) Agreements between institutions or related boards and certified exclusive bargaining representatives providing for grievance procedures and collective negotiations on all personnel matters over which the institution or the related board may lawfully exercise discretion;" RCW 28B.16.100(12).

and the employees of those institutions will be furthered by the enactment of a system of personnel administration designed specifically to meet particular needs in connection with employer–employee relations in the state institutions of higher education. The general purpose of this chapter is to *establish a system of personnel administration for the institutions of higher education in the state which is based on merit principles and scientific methods,* and which governs the appointment, promotion, transfer, layoff, recruitment, retention, classification and pay plans, removal, discipline, and welfare of employees covered under this chapter.

(Italics ours.) RCW 28B.16.010.

To administer this personnel system, RCW 28B.16.060 creates a 3–member Higher Education Personnel Board charged with rule–making authority in traditional civil service matters such as employee dismissal, appointment, classification, and compensation. The board also is granted authority over such labor relations subjects as the determination of appropriate bargaining units, certification of exclusive bargaining representatives, collective bargaining negotiations and agreements, and the determination and remedy for unfair labor practices. RCW 28B.16.100(1)–(19); RCW 28B.16.230. RCW 28B.16 thus vests the HEP Board with broad authority over both the civil service and labor relations aspects of the higher education personnel system. *See State ex rel. Washington Fed'n of State Employees v. Board of Trustees,* 93 Wn.2d 60, 66, 605 P.2d 1252 (1980).

According to petitioners, the legislature made a thorough study of all aspects of the personnel policies in the higher education system before it passed the act which created the Higher Education Personnel Board in 1969. A civil service system in higher education was established originally in 1961, with a separate personnel committee at each college performing all personnel and labor relations functions. Dissatisfaction with the administration of the civil service system by the individual colleges and the resulting lack of uniformity resulted in the legislature's creation in 1967 of a legislative interim committee to study the matter. The

committee, the Temporary Advisory Council on Higher Education, was composed of state senators, representatives, members of the public, and the presidents of the state colleges, the two universities, two community colleges, and the director of the State Board for Community College Education.

On December 16, 1968, after 2 years of work, the Temporary Advisory Council presented to the legislature its report entitled *A Report on Higher Education in Washington* (1969) (Report). Among other suggestions, the Report recommended that the legislature abolish the 27 separate personnel systems, create one uniform personnel system with authority in the HEP Board to make personnel policy for classified staff, and transfer the "third–party role in collective bargaining" to the HEP Board. Report, ch. 7, at 3. The Report stated the purpose and intent of the proposed higher education legislation as follows:

> The combination of the multiple personnel systems within higher education coupled with the dual "management–third party" role of those persons serving both as regents or trustees as well as personnel committee members has prompted considerable discussion as to the merits of continuing the present system. Furthermore, with the advent of collective bargaining the already difficult dual role for those regents and trustees serving as personnel committee members has been significantly increased and in several cases labor organizations have challenged *the ability of the several personnel committees to perform as neutral third parties in matters of collective Bargaining.*

(Italics ours.) Report, ch. 7, at 2.

Referring again to the proposed legislation, the Report went on to say:

> The bill parallels, in many ways, the existing civil service law, and insures that all rights and benefits enjoyed by affected employees under the existing system would be continued. At the same time, however, the proposed legislation recognizes the individual needs of the several institutions and provides that the personnel board adopt rules to insure a maximum of institutional

personnel management subject to appropriate professional audit and review.

Under the proposed legislation the Higher Education Personnel Board would be responsible for determining non–academic personnel policy. *Furthermore, the Board would perform the third–party role in collective bargaining and would hear all appeals regarding employee discharges or classification actions.*

(Italics ours.) Report, ch. 7, at 3.

We think it significant that the Report recommended that the proposed HEP Board assume a "third–party role in collective bargaining". Report, ch. 7, at 3. By its terms, the phrase appears to encompass some form of dispute–resolution authority, and neither the colleges nor the Court of Appeals advance a cogent reason why this authority includes mediation but not arbitration.[3]

■ We also note that the Temporary Advisory Council viewed the proposed legislation as "parallel[ing], in many ways, the existing civil service law". Report, ch. 7, at 3. Our decisions have already found some parallels between the two statutes. We have, for example, previously explained that the purpose of the State Civil Service Law, RCW 41.06, is to create a merit system of public employment and to vest the State Personnel Board with broad rule–making authority over the terms and conditions of employer-employee relations. *Gogerty v. Department of Institutions,*

---

[3]The colleges do not refer to the Report nor evaluate it as a source of legislative history. The legislature appointed the Temporary Advisory Council in 1967, directing it "to study the problems and needs of public higher education in the state of Washington" and

> [t]o submit to the governor and to the legislature, not less than sixty days prior to the 1969 regular session of the legislature, a report which describes problems and needs of public higher education and contains recommendations as to necessary or desirable changes, if any, in the functions and programs of the institutions of public higher education;

Senate Concurrent Resolution No. 15, 40th Legislature, 1st Ex. Sess. (1967). The Temporary Advisory Council submitted its report as directed; as the trial court found, it appears probative of the legislature's intent on the question presented. *See* Note, *Roberts v. Johnson—A Welcome Change Tainted by an Outmoded Approach to Statutory Interpretation,* 2 U.P.S. L. Rev. 408, 415 (1979); *see generally Zuber v. Allen,* 396 U.S. 168, 24 L. Ed. 2d 345, 90 S. Ct. 314 (1969).

71 Wn.2d 1, 4–5, 426 P.2d 476 (1967). Similarly, we have recently said that the HEP Board is empowered to regulate the "major terms and conditions of employment of classified employees of state institutions of higher education". *State ex rel. Washington Fed'n of State Employees v. Board of Trustees,* 93 Wn.2d 60, 66, 605 P.2d 1252 (1980).

Moreover, the language used in former RCW 41.06-.150(12) is nearly identical to that used in RCW 28B.16-.100(12). It reads:

> The [state personnel] board shall adopt rules, consistent with the purposes and provisions of this chapter and with the best standards of personnel administration, regarding the basis and procedures to be followed for:
>
> . . .
>
> (12) Agreements between agencies and certified exclusive bargaining representatives providing for grievance procedures and collective negotiations on all personnel matters over which the appointing authority of the appropriate bargaining unit of such agency may lawfully exercise discretion;

Thus, both the statutes and our cases reveal an identity of subject matter between RCW 41.06 and RCW 28B.16. The question is then whether the "identity of language in the two statutes indicates a substantial similarity of problems in their interpretation, [which] suggests similar results should obtain in both." Note, *Public Employees' Bargaining Rights in Washington,* 14 Gonz. L. Rev. 197, 213 (1978). Clearly, the State Personnel Board and the HEP Board have interpreted the provisions of RCW 41.06-.150(12) and RCW 28B.16.100(12) in a similar way, for prior to the enactment of the Higher Education Personnel Law in 1969, the State Personnel Board adopted a mandatory arbitration rule which is virtually the same as WAC 251–14–110, the HEP Board rule at issue in this case. WAC 356–42–100 (formerly WAC 356–32–270). *See also* WAC 356–42–050(2).

The validity of an administrative rule may also be tested by the construction placed on the authorizing statute by the administrative agency. *Washington Water Power*

*Co. v. State Human Rights Comm'n,* 91 Wn.2d 62, 68–69, 586 P.2d 1149 (1978). Moreover, an administrative construction nearly contemporaneous with the passage of the statute, especially when the legislature fails to repudiate the contemporaneous construction, is entitled to great weight. *Morin v. Johnson,* 49 Wn.2d 275, 279, 300 P.2d 569 (1956). Finally, a contemporaneous construction by the department charged with administering an ambiguous statute is even more persuasive if the legislature not only fails to repudiate the construction, but also amends the statute in some other particular without disturbing the administrative interpretation. *Bradley v. Department of Labor & Indus.,* 52 Wn.2d 780, 786–87, 329 P.2d 196 (1958).

We conclude that all of the above principles are applicable to this case. The legislature enacted RCW 28B.16-.100(12) in 1969. Laws of 1969, 1st Ex. Sess., ch. 36, § 10. In 1970, the HEP Board promulgated the rule requiring binding arbitration of bargaining impasses. In 1971, 1973, 1975, 1977, and 1979, the legislature amended the statute without repudiating the HEP Board's administrative construction. Laws of 1979, ch. 151, § 15; Laws of 1977, 1st Ex. Sess., ch. 152, § 8; Laws of 1975, 1st Ex. Sess., ch. 122, § 1; Laws of 1973, 1st Ex. Sess., ch. 75, § 2; Laws of 1973, ch. 154, § 2; Laws of 1971, 1st Ex. Sess., ch. 19, § 1. In fact, the legislature has on four separate occasions amended in the same act both RCW 28B.16.100 and RCW 41.06.150, without reference to the mandatory arbitration rules promulgated under the respective sections. Laws of 1977, 1st Ex. Sess., ch. 152, §§ 1, 8; Laws of 1973, 1st Ex. Sess., ch. 75, §§ 1, 2; Laws of 1973, ch. 154, §§ 1, 2; Laws of 1971, 1st Ex. Sess., ch. 19, §§ 1, 2.

▆ Applying the rules of construction to the facts of this case, and looking (1) to the legislative history of prior enactments and of RCW 28B.16, (2) to the parallel authority vested in the State Personnel Board and the HEP Board, (3) to the Report, and (4) to the consistent administrative construction placed upon the statute since 1970, we cannot say that "compelling reasons are presented suffi-

cient to show the scheme is in conflict with the intent and purpose of the legislation." *Weyerhaeuser Co. v. Department of Ecology,* 86 Wn.2d 310, 317, 545 P.2d 5 (1976). It follows that the validity of the challenged rule must be upheld.

Several matters remain which may be briefly addressed. First, the colleges contend that mandatory arbitration would usurp the "managerial functions" delegated by the legislature to the boards of trustees of the various colleges. *See* RCW 28B.16.101. In particular, they claim it would take away "the management prerogative to determine the institution's position on the issues at the bargaining table and to determine whether agreement can be reached thereon." Brief for Respondent at 11.

It appears, however, that community colleges have few management rights under any circumstances. Community college districts are administered under the supervisory regulations of both the State Board for Community College Education and the Higher Education Personnel Board. *Greenwood v. State Bd. for Community College Educ.,* 82 Wn.2d 667, 513 P.2d 57 (1973); *Centralia College Educ. Ass'n v. Board of Trustees,* 82 Wn.2d 128, 508 P.2d 1357 (1973); *Cunningham v. Community College Dist. 3,* 79 Wn.2d 793, 489 P.2d 891 (1971). Even the terms of employment for classified personnel in community colleges are governed by the specific provisions of RCW 28B.16.101. Although the statute provides that local colleges may initially exercise discretion on certain issues, that same provision grants the HEP Board "audit and review" powers. RCW 28B.16.101. Thus, any "management rights" of the colleges are subject to review by the HEP Board. Moreover, the Court of Appeals rejected an identical "management rights" argument in *Loosier v. Spokane Community College,* 18 Wn. App. 793, 571 P.2d 970 (1977). There, the court upheld the HEP Board's authority to review a disciplinary action by the college and order reinstatement of an employee, despite the college's claim that the action usurped "management rights".

Second, the colleges point to our decision in *State ex rel. Washington Fed'n of State Employees v. Board of Trustees, supra,* in support of the argument that federal law is a persuasive precedent when a court is interpreting state and federal statutes with similar provisions. They urge us to look to the provisions of the National Labor Relations Act (NLRA), 29 U.S.C. §§ 151–69 (1976), to interpret the mandatory arbitration provisions at issue here. That act has been interpreted by the United States Supreme Court as follows:

> "The Act does not compel agreements between employers and employees. It does not compel any agreement whatever. . . . The theory of the Act is that free opportunity for negotiation with accredited representatives of employees is likely to promote industrial peace and may bring about the adjustments and agreements which the Act in itself does not attempt to compel."

(Citation omitted.) *H.K. Porter Co. v. NLRB,* 397 U.S. 99, 105, 25 L. Ed. 2d 146, 90 S. Ct. 821 (1970). The colleges conclude, therefore, that the NLRA contemplates free and open discussion between the negotiating parties through a noncompulsory bargaining process.

While the colleges' interpretation of the NLRA may be correct, a question we do not decide, reliance on NLRA precedents in the present context is inappropriate. The NLRA regulates labor relations only in the private sector. 29 U.S.C. § 152(2) (1976). The act specifically guarantees employees the right to strike. 29 U.S.C. § 163 (1976). Private sector bargaining and public sector bargaining are radically different, as both parties agree. This is particularly true of higher education employees, since the right to strike is specifically disclaimed under the statute. RCW 28B.16.100(13). In contrast to the private sector, collective negotiations are limited to the issue of working conditions only, and economic matters are not a permissible topic of bargaining under the statute. RCW 28B.16.101.

Finally, the Court of Appeals opinion leaves unclear

which body should be designated as arbitrator, even assuming the HEP Board is empowered to promulgate a mandatory arbitration rule. In addition to the principles elucidated above, there are persuasive reasons why arbitration by the HEP Board is consistent with the intent of the legislature. First, the HEP Board has the general authority to conduct hearings to determine the substance of claims arising under its rules. RCW 28B.16.070(1). In addition, the Report contemplated by its express terms that the HEP Board would serve in this third party role. Report, ch. 7, at 2–3. Further, the HEP Board has, or is expected to continue to develop, particular experience and expertise in dealing with higher education personnel matters. To deprive the HEP Board of the authority to hear impasse arbitration disputes deprives the parties and the collective negotiations process of the benefits of the Board's expertise. This expertise also furthers the goal of consistency in the making of arbitration decisions.

The opinion of the Court of Appeals is reversed.

UTTER, C.J., and ROSELLINI, HOROWITZ, and DOLLIVER, JJ., concur.

BRACHTENBACH, J. (dissenting)—Binding arbitration may well be the best solution to resolution of a labor negotiations impasse. It is not the only alternative. *See* 21 Stan. L. Rev. 340, 377 (1969). The method for resolving such an impasse is a question of public policy, however, which should be settled by the legislature rather than being created by an administrative regulation.

If one thing is clear from the manner in which the legislature has dealt with labor negotiations and arbitration, it is that when the legislature intended that arbitration be available it said so, and provided the mechanisms to implement it. *E.g.,* RCW 41.56.122(2) and .450; RCW 41.59.130; RCW 49.66.090. In contrast, the statute applicable here, together with the supporting material cited by the majority, never even mentioned the word "arbitration."

The sole source of the majority's support for a regulation mandating binding arbitration is RCW 28B.16.100. That section enumerates 19 matters which are the proper subject of rules governing personnel administration. The only section which remotely bears on the issue is subsection 12, which authorizes rules regarding the basis and procedures for "Agreements between institutions or related boards and certified exclusive bargaining representatives providing for grievance procedures and *collective negotiations* . . ." (Italics mine.) The single issue then is whether the power to promulgate rules concerning collective negotiations included the authority to impose mandatory arbitration upon the parties.

"Collective negotiations" is not a term of art which embraces arbitration within its accepted meaning. "Collective" simply means that it is carried on on behalf of a group of employees. "Negotiations" is merely a matter of communications, conferences or discussions in an effort to reach an agreement. *Grammer v. Skagit Valley Lumber Co.,* 162 Wash. 677, 682, 299 P. 376 (1931). At best, the phrase is ambiguous. It may well differ in meaning from collective bargaining. *Lullo v. International Ass'n of Fire Fighters Local 1066,* 55 N.J. 409, 262 A.2d 681 (1970).

The regulations adopted by the Higher Education Personnel Board do not define "collective negotiations", but do define "collective bargaining." WAC 251–04–020(10). Even that definition is silent about arbitration.

The majority finds it significant that a legislative interim committee in its report entitled *A Report on Higher Education in Washington* (1969) recommended that the Higher Education Personnel Board assume a "third–party role" in collective bargaining. Again, the word "arbitration" is absent. However, it is clear that the purpose of the recommendation was to avoid the then existing conflict when trustees or regents also served as members of the personnel committee. The recommendation had nothing to do with the ultimate resolution of labor disputes.

The majority then employs a series of rules of statutory

construction to conclude that collective negotiations must mean authority to impose mandatory arbitration. Those rules of statutory construction cannot provide the missing element, *i.e.,* a statutory grant to the Board to mandate arbitration.

Absent an agreement to arbitrate, or the imposition of a statutory duty, there is no obligation to arbitrate. *Alameda County Employees' Ass'n v. County of Alameda,* 30 Cal. App. 3d 518, 534, 106 Cal. Rptr. 441 (1973); *United Steelworkers v. Westinghouse Elec. Corp.,* 413 Pa. 358, 196 A.2d 857 (1964).

In light of the legislature's history of unequivocally mandating arbitration when it so intended, usually with some specificity concerning the mechanics thereof, I would hold that the general and ambiguous language of the statute did not give the Higher Education Personnel Board the authority to compel arbitration. One need only read RCW 41.56.450, requiring arbitration for certain uniformed personnel, to appreciate the detail with which the legislature acts when it intends to impose arbitration. The ambiguous statute in this case clearly does not satisfy the degree of specificity with which legislative power must be delegated to an administrative agency. *Barry & Barry, Inc. v. Department of Motor Vehicles,* 81 Wn.2d 155, 500 P.2d 540 (1972). Even an enactment as detailed as RCW 41.56.450 has been challenged. *Spokane v. Spokane Police Guild,* 87 Wn.2d 457, 463, 553 P.2d 1316 (1976).

This court should not supply what the legislature omitted. The majority does just that.

I dissent.

STAFFORD and HICKS, JJ., concur with BRACHTENBACH, J.

Reconsideration granted March 30, 1981.